Karen McCarthy

Plaintiff

vrs.

The University of Virginia Health System

Dr Nathan Fountain, Director of the Epilepsy Unit

Jan Garnett, MSN, Unit manager of 6 central

Emile Patterson, RN, shift manager

Linda Anderson, RN, shift manager

CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED
DEC 2 8 2018
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

3:18-CV-00121

## Introduction

1. This is a civil action brought pursuant to ADA violations, through which the plaintiff has been issued a right to sue by the EEOC. This is a civil action due to failure to accommodate known disabilities a after reasonable request was made. This plaintiff seeks relief from an unsafeworkplace, which have resulted in the plaintiff being diagnosed with PTSD, anxiety, anorexia, and insomnia, rendering the plaintiff being unable to work as a nurse in any capacity at this time. The plaintiff is seeking recovery of lost wages, and other benefits, suffering, and life long treatment costs.

## JURISDICTION

2. This action arises under the right to sue issued by the EEOC.

## VENUE

3. Federal court, Western District of Virginia.

## Parties

4. Plaintiff Karen McCarthy, RN/BSN, was employed by The University of Virginia Health

1

System as a staff nurse, clinician 2, shift manager, and preceptor, from September 2000, through September 2018, and is currently on long term disability due multiple psychiatric diagnoses caused by unsafe working conditions and failure to adhere to accommodations agreed to by The University of Virginia Health System, first arising in March of 2016. The plaintiff has been employed as a nurse for 35 years, and is currently unable to work as a nurse in any capacity.

5. Defendant, The University of Virginia Health System. The Health System is being sued for failure to adhere to agreed upon accommodations, and provide adequate safety precautions for staff working with patients who lack capacity, and become violent, resulting in staff injury. Also, for failure to adhere to their own safety protocols.

6. Defendant Dr Nathan Fountain, is the director of the epilepsy unit. He is being sued in a individual capacity.

7. Defendant Jan Garnett, is the unit manager of 6 central, a neurology, stroke, epilepsy unit. She is being sued in a individual capacity

8. Defendant Emile Patterson, RN, shift manager. She is being sued in her individual capacity.

9. Defendent, Linda Anderson, RN, shift manager. She is being sued in her individual capacity.

**Facts**

10. Karen McCarthy is an RN/BSN, plaintiff, who worked at The University Health System from 2000 through 2018, who has been diagnosed and suffers from multiple psychiatric diagnoses due to lack of protection, and several physical attacks on her person, and other staff, as well as an incident of sexual misconduct by a demented patient. She has lost over 60 pounds, and continues to struggle to keep her body weight in the normal BMI range. She also has to take Valium, three times a day, to avoid a constant near panic level of anxiety. She has failed 5 different drugs trials, as well as behavioral cognitive therapy.

11. Since or about March, 2016 Karen McCarthy, plaintiff, has suffered from PTSD, anorexia, anxiety, and insomnia, resulting from several violent incidents including a 40 minute rampage of a well built encephalitic rampaging patient, who wiped a nurse over the head with a metal rod, punched several staff members, and broke a window, exposing numerous staff members to blood. Also, being assigned a patient who struck her, and shoved her into a tiled bathroom wall. At or around this time, there was also a threat of a live shooter. At that time, the doors to the unit did not lock. All of these incidents occurred in or around March 2016. The conditions the plaintiff suffered from required her to take medical leave From March of 2016, to May of 2016. The plaintiff did return to work in May of 2016, with the accepted accommodation that the plaintiff not be assigned violent patients. The University of Virginia Health System accepted this accommodation.

12. In or around March of 2016, the plaintiff took leave under the FMLA law, in an effort to recover from these multiple traumatic events. The plaintiff sought treatment with her private physician, and was prescribed anti anxiety medication, as well as antidepressants. The plaintiff did return to work in May of 2016, with ADA stipulations including not to be assigned violent patients, to work only 8 hour shifts, and only work 3-11pm, due to insomnia. At that time, the plaintiff felt safe enough to return to work, due to new polices and standard work that addressed staff safety. The University of Virginia Health System installed a locking system on all units, as well as an intercom for entry to the units after 9pm. The new standard work also included that known violent patient's were to be evaluated by security for violence, and if deemed necessary to ensure staff safety, to be assigned guards. Also, a new script was developed to address the level of response needed from security and/or police. The plaintiff assisted in the development of this script. Furthermore, a new policy of assessment of staff before approaching patients was implemented, and a plan was approved

3

to allow staff to "run, hide, fight" as needed. The plaintiff also had a meeting with administration, Suzanne Jackowitz, and Paul Muddiman, to address the construction of safe rooms, to address known violent patients. The meeting was fruitless, and no such rooms were constructed, by January 2018. The plaintiffs ADA accommodations were honored until around January 2018, around which time the following incidents occurred.

13. In January 2018, Emile Patterson, RN, shift manager, assigned the plaintiff a patient who had previously assaulted multiple staff members, who did hit, kick and spit on the plaintiff. The plaintiff did advise the Emile Patterson she was not supposed to be assigned violent patients. This patient did not have a guard assigned to him, as is current standard work at The University of Virginia Health System. This was a violation of the plaintiffs return to work accommodations, as determined by Dr Amie Munson, and Dr lily Hargrove, personal physicians, and agreed to by The University of Virginia Health System, as a condition of employment. This patient did not get a guard assigned after the incident of assaulting the plaintiff, and the next day, this patient did attempt to strangle a nurse, (this is the 4th attempt to strangle a nurse that the plaintiff is aware of on this unit) and clawed a patient care assistants arm with his fecal encrusted fingernails. The University of Virginia Health System issues staff silver whistles that they are supposed to blow when being attacked. It is unknown how someone being strangled can blow a whistle. This was the first violation of the ADA return to work accommodations.

14. In or around January of 2018, the plaintiff suffered an incident of sexual misconduct by a demented patient. Per standard work protocol, patients who are known to be sexually aggressive are to have signage on their doors, to warn staff before approaching the patient. Linda Anderson, RN, shift manager, did not have appropriate signage, as per standard work as required by The University of Virginia Health System, on the door of a patients room, whom

4

Case 3:18-cv-00121-GEC Document 1 Filed 12/28/18 Page 4 of 7 Pageid#: 4

Linda Anderson stated she knew to be sexually aggressive. When this patient did become sexually aggressive towards the plaintiff, and other staff members, Linda Anderson blamed the plaintiff for the patient's sexually aggressive behavior, although this type of behavior had not been known to the plaintiff, or other staff members. When the plaintiff questioned Linda Anderson, RN, shift manager, why the patient did not have appropriate signage on the door, she responded by shrugging her shoulders, and saying, "Why doesn't "John Doe", (another sexually inappropriate patient), have signage on his door?" This is an incident of failure to conform to the policies to ensure staff safety, or follow standard work, as required by policy at The University of Virginia Health System.

15. In or around January of 2018, Linda Anderson RN, shift manager, assigned the plaintiff, who was involved in a medical emergency code, a new admission in violation of the acuity system,-(Acuity can be defined as the measurement of the intensity of nursing care required by a patient. An acuity-based staffing system regulates the number of nurses on a shift according to the patients' needs, and not according to raw patient numbers.)- which is standard work on 6 central. The medical emergency code required the plaintiff to escort the patient undergoing the medical emergency code to the first floor for a CT scan. This violation of standard work is very dangerous, as the patient being admitted did not have an RN on the floor to assess him upon admission, nor did the plaintiff ever receive report on him, ensuring his admission was appropriate.

16. In or around January of 2018, 2 patient's with known histories of post seizure violence were assigned to the plaintiff, on 6 central, with no warnings or precautions in place. One of these patients admitted to throwing a hospital bed through a window in the emergency room in Danville, Virginia. This patient is a well built, 340 pound male. He was admitted on the 6th floor, where the windows break, into a semi-private room, with a vulnerable roommate.

5

The plaintiff spoke to the MD, and asked if he knew of the patients history of violence. The Dr who admitted the patient, stated he knew of the patient's history, but that the patient was safe, due to medications. The next day, the plaintiff reported for her shift, was assigned this known violent patient against her ADA accommodations, and was told the patient was off all his medication, and his medication blood levels were not therapeutic.
At this time, the plaintiff asked the physician who admitted the patient,if he was trying to get the plaintiff murdered. The plaintiff was written up for insubordination. After these 2 incidents, a pre-admission form addressing staff and patient safety, new standard work to assess patient's for potential violence, was developed. Dr Nathan Fountain is the director of the epilepsy unit. As an academic institution, this lessons of 2016 should have been incorporated to ensure staff and patient safety, before admitting these dangerous patients, so that staff and patient safety could proactively be addressed.

17. In or around January of 2018, Jan Garnett, unit manager, did not ensure newly developed standard work to ensure staff safety was being adhered to. That violent patients were to have guards at all times to protect staff. That signage for sexually aggressive patients be in place to warn staff of potential danger, and not to enter this type of patient's room alone. Also, the plaintiff asserts that a whistle is inadequate protection for staff being attacked.

## CAUSES OF ACTION

18. Defendants, by the conduct described above, failed to accommodate the plaintiffs known disability despite their knowledge of the disability, and accommodation requested.
19. The above mentioned conduct violated the Americans with Disabilities Act, and or Rehabilitation Act.

6

20. As a direct result of the conduct, failure to adhere to accommodations and failure to act according to their own standard work, plaintiff suffered severe exacerbation of her diagnoses, rendering her unable to preform in her profession, in any capacity, and has suffered harm.

WHEREFORE, the plaintiff requests the following relief.

a. Loss of wages, and other benefits.

b. Monies for pain and suffering.

c. Life long monies to pay for further medical care, as her conditions are expected to be lifelong, as stated by her physicians.

d. Awarding such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.


Respectfully submitted,

Karen McCarthy

*/s/ Karen McCarthy*
12/27/2018